## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DAVID WITTMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:24-CV-927-MAB** |
| | ) | |
| **VESTIS SERVICES, LLC,** | ) | |
| formerly known as Aramark Uniform & Career Apparel, LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff David Wittman slipped and fell on a floor mat at the Quality Buick GMC auto dealership in Alton, Illinois ("the dealership") where he works. He brought this negligence action against Defendant Vestis Services, LLC, the company from which the dealership rented the floor mats, claiming Vestis is liable for his injuries because one of its employees put the wet mat down on the floor in the minutes before he fell.

Vestis moved for summary judgment, arguing that Plaintiff's claim is based on nothing more than speculation that his fall was caused by a wet floor mat that Vestis had placed on the floor that day (Doc. 49; *see also* Doc. 50). Plaintiff filed a response, arguing that there is enough circumstantial and direct evidence to support a verdict in his favor (Doc. 52; *see also* Doc. 51), to which Vestis filed a reply brief (Doc. 53). For the reasons explained below, Defendant's motion for summary judgment is granted.

## FACTS

In early April 2023, the dealership started renting uniforms for its employees, cleaning supplies (like shop towels, mop heads, etc.), and floor mats throughout the premises from Vestis (formerly known as Aramark) (Doc. 50-2, p. 15 (Grote depo); *see also* Doc. 51-4, pp. 63–66 (invoice)).[1] Vestis provided service once a week at the dealership, through sales route representative Bruce Gray (*Id.*; Doc. 51-4, pp. 11–12 (Gray depo)). Gray went to the dealership on Monday mornings, typically arriving between 7:00 and 7:45 a.m., to collect the dirty uniforms, cleaning supplies, and floor mats and deliver clean ones (*Id.* at p. 7, 11–12, 13). With respect to the floor mats, Vestis was initially contracted to provide full service, meaning Gray went through the dealership and picked up each dirty floor mat and laid down a clean one, then took the dirty mats back to the Vestis shop to be cleaned (Doc. 50-2, pp. 15–16 (Grote depo)).

The flooring throughout the dealership is shiny, ceramic or perhaps porcelain tile, as depicted in photographs taken by Plaintiff's counsel (see Doc. 51-1, pp. 92, 93, 151–53 (photos)).[2] Vestis employees testified that this type of flooring is particularly susceptible to floor mats sliding if the mats or flooring is wet because moisture between the rubber

---

[1] Keith Grote is the general manager at Vestis (Doc. 50-2, p. 7 (Grote depo)). He is the direct supervisor of the territory manager, Jacob Gutzler (Doc. 51-5, pp. 7, 8, 18 (Gutzler depo)). And Gutzler is the direct supervisor of Bruce Gray, the route sales representative (Doc. 51-4, pp. 7, 24 (Gray depo)). Jacob Myers was route sales support and accompanied Bruce Gray to the dealership on Monday, April 24, 2023 and Monday, May 15, 2023 (Doc. 50-9, pp. 9–10, 53–54, 56, 66, 68 (Myers depo)).

[2] *See also* Doc. 50-9, pp. 68, 69–70 (Myers depo, suggesting floors were marble or something akin to marble and the same throughout the dealership); Doc. 50-6, p. 13 (Randolph depo, acknowledging floors are shiny, ceramic tile); Doc. 51-2, p. 58 (Kotzamanis depo, acknowledging floors throughout dealership are tile); Doc. 42-4, p. 56 (Cody Stevenson depo; acknowledging floors in showroom and body shop office are the same).

backing on the bottom of the mat and the tile floor prevents the mat from adhering to/gripping the floor (Doc. 51-5, pp. 24–25 (Gutzler depo); Doc. 50-2, pp. 16–17 (Grote depo)).

There was a history of people slipping on floor mats at the dealership and falling. Prior to contracting with Vestis, the dealership used a different vendor for uniforms, towels, and floor mats (Doc. 50-4, pp. 12–13 (Cody Stevenson depo)). The dealership became dissatisfied with the previous vendor because the dealership came to believe that the vendor was delivering wet floor mats, which were causing people to fall (Doc. 50-4, p. 13 and Doc. 42-4, pp. 13–14 (Cody Stevenson depo); Doc. 51-1, p. 138 (letter)).

Cody Stevenson testified that when the dealership switched to Vestis, he repeatedly stressed to Vestis the importance of making sure the that the bottom of the floor mats were not wet (Doc. 42-4, pp. 16–17 (Stevenson depo)). Bruce Gray testified that he was aware of the issue with wet mats and therefore "was very careful" as to the mats he put down at the dealership (Doc. 51-4, p. 18 (Gray depo); *see also* Doc. 50-9, pp. 55–56 (Myers depo)). Nevertheless, people continued to slip on floor mats at the dealership. There were two such incidents in April 2023, right after Vestis took over mat service at the dealership (Doc. 51-1, p. 138 (letter); *see also, e.g.,* Doc. 51-2, pp. 17, 20–21, 25 (Katzomanis depo). And on Monday, May 15, 2023, Plaintiff David Wittman, who was the body shop manager at the dealership, slipped on a floor mat in the body shop office and fell.

According to Wittman, he had arrived at the dealership on May 15th around 6:00 a.m. (Doc. 51-1, p. 46 (Wittman depo)). He estimated that, in the hour that followed, he

walked across the floor mat in the body shop office probably 10 to 12 times without any problem (*Id.* at pp. 47–48). Then, "a little after" 7:00 a.m.—and about 10 minutes after the Vestis truck had arrived—he was returning to his office from being elsewhere at the dealership (*Id.* at pp. 45, 52, 53, 54). He entered through an exterior door (meaning from the outdoors), took one step inside onto the rug and it slid forward, causing him to fall backwards and hit his face on the door jamb before landing on the floor (*Id.* at pp. 53, 54–55, 56–57, 76).

Angelo Kotzamanis, the service manager at the dealership, heard that Wittman had fallen (Doc. 51-2, pp. 32, 36 (Kotzamanis depo)). Angelo said that he went out to the body shop office, pulled the floor mat up, and saw it was wet underneath (*Id.* at pp. 32–33), which is evident in the photos that he took at the time (*Id.* at pp. 24, 26, 43; *see also id.* at pp. 105, 106 (photos)). Angelo said he retrieved Bruce Gray and the trainee who was with him, Jacob Myers, showed them that the mat was wet, and said "we can't have this" (*Id.* at pp. 33, 36, 41, 42, 71). Angelo said Bruce acknowledged the mat was wet, and either Bruce or Jacob rolled up the mat and took it away (*Id.* at pp. 33, 34, 37, 41, 42).

Plaintiff believes the water was from the Vestis employees laying down a wet mat while he was out of his office, saying "I didn't have an issue with the rug until the truck showed up" (Doc. 51-1, p. 113 (Wittman depo); *see also id.* at p. 63; Doc. 42-4, p. 60 (Cody Stevenson depo)). However, it is undisputed that none of the dealership employees who were deposed in this matter—including Plaintiff—actually saw the Vestis employees lay down any mats on the day of Plaintiff's fall (Doc. 51-1, pp. 34, 61, 63–64 (Wittman depo); Doc. 50-4, p. 47 (Cody Stevenson depo); Doc. 51-2, p. 48 (Kotzamanis depo); Doc. 50-6, p.

24 (Randolph depo); Doc. 50-7, p. 10 (Leslie Burch depo) ).

Vestis contends that, at the time of Plaintiff's fall, they were no longer laying down floor mats at the dealership. Specifically, after a previous slip and fall on April 24th at the dealership, the owner of the dealership, David Stevenson, sent a letter to Vestis demanding a meeting to discuss the issue of wet floor mats (Doc. 51-1, p. 138 (letter); *see also* Doc. 50-2, p. 13 (Grote depo)).[3] According to Vestis employees, a conversation was had with the dealership, and it was decided that Vestis would no longer physically change the floor mats at the dealership (Doc. 50-2, pp. 12–14 (Grote depo); Doc. 51-5, pp. 16–17, 25–26, 47 (Gutzler depo); (Doc. 51-4, pp. 24–25 (Gray depo); Doc. 51-4, pp. 24–25 (Gray depo); (Doc. 50-9, pp. 30–31, 50, 56–57 (Myers depo)). Rather, Vestis would simply retrieve the dirty mats that the dealership rolled up for them to collect, and they would leave a bin of clean mats for the dealership's custodial staff to put down as needed (Doc. 51-4, pp. 25–26 (Gray depo); Doc. 50-2, pp. 14, 16 (Grote depo); Doc. 50-9, pp. 53–54, 56–57 (Myers depo)).

Bruce Gray and Jacob Myers admit they were at the dealership at the time Plaintiff fell, but they both emphatically denied that they had changed out any mats that day (*see* Doc. 51-4, p. 20, 25, 34 (Gray depo); Doc. 50-8, pp. 26, 30, 36 (Myers depo)). Gray testified that the last time he changed out a floor mat at the dealership was three weeks prior on

---

[3] The dealership blamed the April 24th fall on wet floor mats (*see* Doc. 51-1, p. 138 (letter)). However, according to Bruce Gray, the mats he put down that day were brand new and had never been laundered (Doc. 51-4, pp. 22–23). He said he looked under the mats that day to verify that there was no water, and he took pictures which also show that the mats were dry (*Id.* at pp. 17–18, 18–20; *see also id.* at pp. 59–61 (photos)).

April 24th and he "did not touch one more mat there after that date" (Doc. 51-4, pp. 20, 25 (Gray depo); *see also id.* at pp. 25–29, 34, 41). Similarly, Myers said they were told after the April 24th incident "not to touch the mats" at the dealership and they never did so again (Doc. 50-9, pp. 30–31 (Myers depo); *see also id.* at pp. 50, 56–57, 58). Myers said all they did on May 12th was deliver a bin of clean mats to the dealership, and it was still in the showroom when Wittman fell (*Id.* at pp. 26, 30).

Additionally, both Gray and Myers dispute that Angelo came and got them on the day of Wittman's accident and took them back to look at the mat (Doc. 5-4, p. 33 (Gray depo); Doc. 50-9, pp. 31, 34–35, 47–48 (Myers depo)). And Myers denied that they rolled up the mat and took it with them (Doc. 50-9, p. 30 (Myers depo)).

Dealership employees agree that Vestis stopped swapping out the floor mats, although none of them have a firm recollection as to when it happened (*see* Doc. 50-4, pp. 48–49 (Cody Stevenson depo); Doc. 51-2, pp. 29, 61–64, 65 (Kotzamanis depo)). Plaintiff claims that after the April 24th incident, Cody Stevenson told Vestis to stop changing out mats "at the dealership," but Vestis only stopped changing out the mats in the showroom; they continued changing out the mats elsewhere at the dealership in the body shop office and the body shop building (Doc. 51-1, pp. 31–32, 32–33; *see also id.* at pp. 36–37). Plaintiff testified (after much back and forth) that he saw Vestis change out the floor mat in the body shop office the Monday before his fall as well as the Monday after his fall (*Id.* at pp. 35–36, 38–39). But again, he did not see them change out the mat the day of his fall (*Id.* at pp. 34, 61, 63–64). Plaintiff said Vestis stopped changing out the mat in his office after Cody or Dave Stevenson bought double-sided tape to affix the corners of the mats to the

floor, which he says was about two weeks after his fall (*Id.* at pp. 39–40).

Plaintiff points out that no one recalls it raining on the day of his fall (*see* Doc. 51-1, p. 79 (Wittman depo); Doc. 51-2, pp. 30, 54 (Kotzamanis depo); Doc. 51-4, p. 40 (Gray depo)). And the custodian had not mopped that day in the body shop office (Doc. 51-1, pp. 61, 63 (Wittman depo); *see* Doc. 51-3, p. 13, 14 (Sabrina Randolph depo)). Furthermore, dealership employees uniformly testified that when the custodian mopped, she did *not* pick up the floor mats and just mops around the edges of the mats (Doc. 51-3, pp. 15–16, 21 (Sabrina Randolph depo); Doc. 42-4, p. 57) (Cody Stevenson depo); Doc. 51-2, p. 59 (Kotzamanis depo)). Jacob Myers, however, specifically recalled that during his first visit to the dealership on April 24th, he saw the custodian move a mat that they had just placed, mop, and then lay the mat back down (Doc. 50-9, pp. 51–52).

## DISCUSSION

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view all the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is warranted. *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (citation omitted). *See also Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) ("Factual disputes are genuine only if there is sufficient

evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law.") (citation and internal quotation marks omitted).

With the case proceeding under diversity jurisdiction, the substantive tort law of Illinois applies. *LoBianco v. Bonefish Grill, LLC*, 94 F.4th 675, 677 (7th Cir. 2024) (quoting *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 570 (7th Cir. 2022)). Under Illinois law, a party who creates a dangerous condition on a premises on behalf of the owner or possessor of the premises can be held liable for injuries to third parties resulting from the dangerous condition. *Studer v. Cent. Illinois Scale Co.*, 192 N.E.3d 774, 780 (Ill. App. Ct. 2021) (citing *Corcoran v. Vill. of Libertyville*, 383 N.E.2d 177, 179 (Ill. 1978)).

To succeed on a negligence claim in Illinois, the plaintiff must prove that the defendant owed a duty of care, the defendant breached that duty, and the breach was the proximate cause of the plaintiff's injuries. *LoBianco*, 94 F.4th at 677 (quoting *Enadeghe v. Dahms*, 95 N.E.3d 1170, 1175 (Ill. App. Ct. 2017)). Here, the issue is proximate cause, and specifically whether it is Defendant who created the dangerous condition at the dealership that caused Plaintiff's injury.

To establish proximate cause, "the plaintiff bears the burden of 'affirmatively and positively showing,' that the defendant's alleged negligence caused the injuries for which the plaintiff seeks to recover." *Berke v. Manilow*, 63 N.E.3d 194, 204 (Ill. App. Ct. 2016) (citation omitted). "Liability against a defendant cannot be predicated on speculation, surmise, or conjecture." *Id.* (citation omitted). Rather, the plaintiff must establish with "reasonable certainty," through direct evidence or reasonable inference, that the

defendant's acts or omissions caused their injury.   *LoBianco*, 94 F.4th at 677; *Berke*, 63 N.E.3d at 204. *See also Krywin v. Chicago Transit Auth.*, 938 N.E.2d 440, 446–47 (Ill. 2010) ("The term 'proximate cause' contains two elements: cause in fact and legal cause. Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the plaintiff's injury."); *Barker v. Eagle Food Centers, Inc.*, 634 N.E.2d 1276, 1278 (Ill. App. Ct. 1994) ("Proximate cause can only be established when there is a reasonable certainty that defendant's acts caused the injury.").

Defendant asserts, and Plaintiff concedes, that there is no direct evidence that Vestis employees placed a wet floor mat down on the floor of the body shop office just minutes before Plaintif's fall (*see* Docs. 50, 52, 53). Bruce Gray and Jacob Myers both testified unequivocally that they did not. And there is no testimony from anyone or video footage to the contrary. Rather, the testimony is that nobody saw Vestis place a floor mat on the floor of Plaintiff's office for at least a week prior to the date of Plaintiff's accident.

In the absence of any direct evidence, Plaintiff has only circumstantial evidence to rely on to establish that Vestis created the dangerous condition (*see* Doc. 52). It is well established that circumstantial evidence may be enough to establish proximate causation and survive summary judgment. *E.g., Berke*, 63 N.E.3d at 204; *Wrobel v. City of Chicago*, 742 N.E.2d 401, 408 (Ill. App. Ct. 2000). "Circumstantial evidence is the proof of certain facts and circumstances from which a fact finder may infer other connected facts that usually and reasonably follow according to the common experience of mankind." *Wrobel*, 742 N.E.2d at 408. When relying on circumstantial evidence to establish causation under Illinois law, the conclusion that the plaintiff seeks to establish need not be the only *possible*

conclusion that flows from the evidence, *Berke*, 63 N.E.3d at 204, but it "must be the only *probable* conclusion." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 850 (7th Cir. 2017) (citing *Williams v. Chi. Bd. of Educ.*, 642 N.E.2d 764, 768 (Ill. App. Ct. 1994)) (emphasis added). *See also Berke*, 63 N.E.3d at 204 ("[A] fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn.") (citation omitted).

"Unsurprisingly, this means that a fact 'cannot be inferred from the evidence when the existence of another fact inconsistent with the first can be inferred with equal certainty from the same evidence.'" *Baugh*, 845 F.3d at 850 (citing *Pyne v. Witmer*, 543 N.E.2d 1304, 1313 (Ill. 1989)). *See also Berke*, 63 N.E.3d at 204 (when the evidence demonstrates "that the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion is a matter of speculation, conjecture, and guess and the trier of fact cannot be permitted to make that inference.") (citation omitted). Although the question of proximate cause is normally one of fact for the jury, it becomes a question of law "when the evidence is such that there could be no difference in the judgment of reasonable men as to the inferences to be drawn therefrom[.]" *Williams v. Chi. Bd. of Educ.*, 642 N.E.2d 764, 768 (Ill. App. Ct. 1994).

Here, Plaintiff points to a number of facts from which he claims a jury could infer that one of Vestis's employees on site on May 15th "replaced the dry, well adhered mat that was in [his] office" with a wet mat (Doc. 52, p. 3). Those facts are that he did not have any problems with the floor mat during the first hour he was at work before the Vestis employees arrived, Vestis employees were at the dealership at the time of his fall, he saw

the Vestis employees lay down mats the week before his fall, the invoice shows that mats were delivered the day of his fall, and the Vestis employees "did not protest when accused of delivering a wet mat." (Doc. 52, pp. 2, 3, 4). Plaintiff also tries to preemptively rule out any alternate sources for the water by arguing that it was not raining the day of his fall and the custodian always mopped around the mats, never underneath (Doc. 52, p. 4; Doc. 51, para. 10, 18).

However, the Court concludes that the circumstantial evidence cited by Plaintiff, even when viewed in a light most favorable to him, is not sufficient to establish reasonable certainty that Vestis employees replaced a dry mat with a wet mat shortly before his fall. In other words, no reasonable jury could draw the inference that Vestis is liable for creating the condition upon which Plaintiff fell.

Plaintiff is the only witness in this case to testify that Vestis was still changing out mats every Monday at the dealership. This testimony was not corroborated by any of the other dealership employees, and it was flatly contradicted by all of the Vestis witnesses. But even if a jury were to credit Plaintiff's testimony, there is nothing else from which the jury could infer that Vestis had in fact swapped out a dry mat for a wet one in the minutes before Plaintiff's fall. First, the undisputed evidence is that Vestis had only been at the dealership for a short time before Plaintiff's fall. There is no testimony or video evidence that, in that brief time, anyone saw the Vestis employees placing mats on the floor *anywhere* at the dealership, or handling mats in any fashion that suggested they were in the process of servicing the mats (meaning collecting the dirty ones and laying down clean ones). And the invoice Plaintiff cited to cannot establish as much, given the

undisputed testimony of the Vestis witnesses (*see* Doc. 51-5, pp. 26–27, 43–44 (Gutzler depo, testifying price listed on invoice for mats would not be adjusted even if they were not being serviced because the mats were still in the building and were still being rented); Doc. 51-4, p. 30 (Bruce Gray depo, testifying that even though mats were billed, they were not serviced on May 15th and a large credit was later written to account "for the mats not being serviced" or "the previous deliveries that were not made"); *see also* Doc. 51-4 , pp. 63–66 (invoice)).

There is also no evidence that the Vestis employees were in the location of the accident during the brief time they had been at the dealership. That is, there is no testimony or video evidence showing the Vestis employees in, entering, leaving, walking toward, walking away from, etc. the area of the body shop office. *See Varner v. Johnson*, 40 F. App'x 997, 1002 (7th Cir. 2002) (explaining plaintiff fails to create reasonable inference that defendant business owner is liable for presence of foreign substance on the ground when there is no evidence "that the defendant (or an agent) had used or came in contact with foreign material *in the location of the accident*") (emphasis added) (citing *Olinger v. Great Atlantic & Pacific Tea Co.*, 173 N.E.2d 443 (Ill. 1961)); *Price v. Int'l Paper Co.*, No. 17-CV-06097, 2020 WL 6044288, at *3 (N.D. Ill. Oct. 13, 2020) ("Illinois courts have held that a plaintiff proceeding under an ordinary negligence theory must offer more than the mere 'presence of the substance and the occurrence of the injury[.]'") (quoting *Olinger*, 173 N.E.2d at 446).

Furthermore, there is nothing that establishes a reasonable certainty that the mat Plaintiff fell on was dry prior to the Vestis employees' arrival at the dealership. For

example, there is no evidence that Plaintiff, or anyone else at the dealership, ever inspected the mat on May 15th prior to his fall, or even made a mental note of any kind about its general condition. Plaintiff assumes the mat was dry before the Vestis employees got there because he had no issues with the mat during the first hour he was at work. But it is equally likely that the mat was wet and, each of the previous times that Plaintiff crossed it, he simply stepped in a different spot on the mat or just got lucky,

As for the photos of the mat that Angelo Kotzamanis took immediately after Plaintiff fell, when these photos are considered in the context of the other evidence in this case, no reasonable jury could draw Plaintiff's desired inference that Vestis employees placed the mat that morning. The top of the mat is visibly wet (*see* Doc. 51-1, pp. 141, 142); as Bruce Gray said when he looked at the photos, it "looks like somebody poured a bottle of water on it" (Doc. 51-4, p. 40). And the amount of moisture underneath the mat is also considerable, almost shocking (*see* Doc. 51-1, pp. 141, 142). It is no stretch to say that, if Vestis employees had laid down the mat just minutes prior to Plaintiff's fall, it would have literally been dripping water as they handled it. It defies credulity that Vestis employees would ever lay down such a visibly wet mat when dealership and Vestis employees alike testified that it had been drilled into their heads that the floor mats had to be absolutely dry when they were put down.[4] Additionally, Bruce Gray testified that

---

[4] For example, Cody Stevenson testified that before the dealership contracted with Vestis, Vestis was told "over and over and over and over and over" that the dealership "wanted to make sure they used a process that would not make them mats wet underneath them[.]" (Doc. 42-4, pp. 16–17). "It was said to them a million times. . . . Every time that we spoke to them, that was talked about. I would go with well over 30 times it was said to them that was the reason why we were going with them, and we were relying on them to make sure the rugs were safe." (*Id.* at p. 17). Vestis employee Jacob Myers similarly testified that "when

it was not what a typical mat delivery looked like (*Id.* at p. 42), and his testimony is undisputed. Gray further testified that he has never had an excessive moisture problem with mats in almost a decade with Vestis, and its never been a problem for any of his other customers (Doc. 51-4, pp. 7, 39). He said "In my full tenure there, I have never ever seen a wet mat [like] the pictures I was shown [of the mat Plaintiff fell on]" (*Id.* at p. 39) (cleaned up). Jacob Gutzler similarly testified that he has never dealt with a complaint from any of his other 500 to 600 customers about an oversaturated mat (Doc. 51-5, pp. 8, 27). He stated succinctly, perhaps even tersely, that "we don't deliver oversaturated mats." (Doc. 51-5, p. 24). In light of all of this evidence, it is simply not probable that Vestis employees laid down a very wet mat on the morning of Plaintiff's fall, and the Court believes that no reasonable jury could conclude otherwise.

Finally, Plaintiff's attempt to persuade the Court that there is no alternative source for the water on the mat is simply not convincing. The ordinary experience of anyone who has dealt with tile floors is that the grout lines are typically not flush with the top of the tiles, they are depressed to some extent. And floor mats, like the ones at the dealership, generally do not conform perfectly to every grout line (*see* Doc. 51-1, pp. 141–44; Doc. 51-4, pp. 59–61 (photos of the mats)). That means there is generally a gap, however tiny, between the bottom of a floor mat and a grout line, which allows water to seep under the edges of the mat. Principles of elementary school science class suggest

---

we got the contract for Quality they made us aware that they had a lawsuit with [the previous vendor]" because "somebody fell on [their] mat. So we were instructed to make sure that there was absolutely no moisture on the floor, no moisture on the mat, nothing, nothing, no wetness, nothing" (Doc. 50-9, pp. 55–56).

that any water that seeped under the mat would be trapped there because the rubber backing of the mat would prevent it from evaporating.

Plaintiff's argument boiled down is that he fell on a Vestis-supplied mat that the dealership was renting and the mat was wet, so it must be Vestis's fault. As Defendant said, "Plaintiff's theory here is just a guess" (Doc. 53, p. 6). But, again, liability "cannot be predicated on speculation, surmise, or conjecture" as to who caused the dangerous condition. *Berke v. Manilow*, 63 N.E.3d 194, 204 (Ill. App. Ct. 2016). Even when the Court focuses on the most persuasive story possible on Plaintiff's behalf, a verdict in his favor could result only from irrational speculation. Accordingly, Defendant Vestis is entitled to summary judgment. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 650 (7th Cir. 2014) (affirming summary judgment where plaintiff failed to set forth sufficient evidence to create an inference that defendant caused the water spill that led to her injury).

### CONCLUSION

Defendant Vestis Services, LLC's motion for summary judgment (Doc. 49) is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: March 17, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**