**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DAVID WITTMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:24-cv-927-MAB** |
| | ) | |
| **VESTIS SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

Plaintiff David Wittman alleged that he fell when he stepped on a floor mat in his office at work, and the mat slid because it was saturated with water and lost its grip on the tile floor (Doc. 1; *see also* Doc. 52, p. 2). Plaintiff claimed Defendant Vestis Services, LLC, was liable for his injuries because one of its employees replaced the dry, well adhered mat that was in his office with the wet mat in the minutes before he fell (Doc. 1; Doc. 52, pp. 3–4). Vestis moved for summary judgment arguing there was "nary a shred of evidence" that its employees had laid down a mat in Plaintiff's office on that date (Doc. 50, p. 4). The Court ultimately agreed with Vestis and granted summary judgment, concluding that Plaintiff failed to put forth evidence sufficient to allow a reasonable jury to infer that Vestis negligently created the dangerous condition that caused Plaintiff's fall (Doc. 56, p. 11).

Plaintiff filed a timely motion under Rule 59(e) seeking to vacate, modify or set aside the summary judgment order (Doc. 58), which is presently before the Court.

Plaintiff argues that the Court impermissibly weighed competing evidence and made credibility determinations when it concluded that Vestis was entitled to summary judgment (Doc. 58). Vestis responded in opposition, arguing that Plaintiff's motion was meritless (Doc. 59), so meritless, in fact, that Vestis should be awarded its attorney fees and costs incurred in responding to the motion (*id.* at p. 7). Plaintiff filed a reply, arguing that Vestis's request for attorney fees and costs should be denied because the argument is too perfunctory and undeveloped (Doc. 60).

Rule 59(e) allows for altering or amending the judgment when the movant clearly establishes "that the court committed a manifest error of law or fact." *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012). The issue on summary judgment was whether there was evidence sufficient for a reasonable jury to find that Vestis employees negligently created the dangerous condition that caused Plaintiff's injury by replacing a dry floor mat in his office with a wet mat shortly before his fall (Doc. 56, p. 8; *see also* Doc. 52, p. 2). The Court framed and analyzed the issue as one of proximate cause (*see* Doc. 56, pp. 8–11). But, upon further reflection, there was no dispute that Plaintiff's fall and subsequent injuries were caused by slipping on a wet floor mat (*see* Doc. 51). The issue really boiled down to whether there was any proof that Vestis employees put the wet mat on the floor, which asks whether they breached their duty of care by placing the mat in a negligent manner. That being said, the Court is unpersuaded that it erred in granting summary judgment to Vestis. The Court did not weigh the evidence or decide which evidence should be believed. Rather, the Court looked at Plaintiff's evidence and determined it was simply not enough for any reasonable jury to infer that Vestis

employees put down a wet mat on the day in question (*see* Doc. 56, pp. 11–15). A jury could only reach that conclusion, and decide in Plaintiff's favor, through impermissible speculation.

The case law cited by the parties and reviewed by the Court on this issue involves the liability of a business when a business invitee is injured by slipping on a foreign substance on the business' premises, not the liability of a third-party vendor, like Vestis (Docs. 50, 52, 53). *See, e.g., Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 707–08 (7th Cir. 1999)*; Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649–50 (7th Cir. 2014); *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038–39 (7th Cir. 2016); *Caburnay v. Norwegian Am. Hosp.*, 963 N.E.2d 1021, 1031–33 (Ill. App. Ct. 2011); *Wind v. Hy–Vee Food Stores, Inc.*, 650 N.E.2d 258, 262–63 (1995). But these cases are nevertheless instructive as they address the type of evidence necessary to give rise to an inference that the defendant created a dangerous condition.

Specifically, the plaintiff must show something more than the mere "presence of the substance and the occurrence of the injury." *Olinger v. Great Atl. & Pac. Tea Co.*, 173 N.E.2d 443, 446 (Ill. 1961). In order to create a triable issue of fact and survive summary judgment, the plaintiff has to "show that the foreign substance was related to the defendant's business" as well as "some further evidence . . . however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was *more likely* that defendant or his servants, rather than a customer, dropped the substance on the premises . . . ." *Zuppardi*, 770 F.3d at 649–50 (quoting *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 439 (Ill. 1958)) (emphasis added); *Olinger*, 173 N.E.2d

at 446. *See also Varner v. Johnson,* 40 F. App'x 997, 1002 (7th Cir. 2002) (explaining courts have found sufficient evidence to infer defendant was responsible for creating dangerous condition where "the plaintiffs . . . presented evidence that the defendant (or an agent) had used or came in contact with foreign material in the location of the accident."). In other words, the circumstantial evidence must establish facts that make the conclusion that the defendant was negligent "the more probable, as opposed to possible, one." *Wrobel v. City of Chicago*, 742 N.E.2d 401, 408 (Ill. App. Ct. 2000). *See also Williams v. Chicago Bd. of Educ.,* 642 N.E.2d 764, 768 (Ill. App. Ct. 1994) ("When a party seeks to rely on circumstantial evidence to establish a fact, the conclusion sought must be more than speculative; rather the conclusion must be the only probable conclusion.") (cited by *Baugh v. Cuprum S.A. de C.V.,* 845 F.3d 838, 850 (7th Cir. 2017)).

There are several cases from the Seventh Circuit that illustrate these concepts. First is *Zuppardi v. Wal-Mart Stores, Inc.*, where the plaintiff slipped on a puddle of water in an aisle at Wal-Mart. 770 F.3d 644, 646 (7th Cir. 2014). She contended that Wal-Mart caused the spill and pointed to the fact that the puddle was near the doors employees traveled through to clock in and out, take breaks, and unload inventory; that an employee restocking water would need to cross over the location of the puddle; and that, at the time of her fall, an employee was engaged in restocking shelves a few aisles away in what may have been the soda and water aisle. *Id.* at 646, 650. The Seventh Circuit rejected the plaintiff's contention as "pur[e] . . . speculation" and nothing more than "a possible way in which a Wal-Mart employee could have caused the spill," which was not enough to survive summary judgment. *Id.* at 650. The Seventh Circuit further explained that the

plaintiff "[had] not come close" to presenting evidence sufficient to create an inference that Wal-Mart was responsible for the spill when she did not see the water prior to her fall nor did she know how the water had accumulated; there were no trails, tracks, or footprints leading to or from the puddle to any store display or freezer; and she saw no employees as she traveled down the aisle prior to the fall. *Id.* All the plaintiff had was "evidence that she slipped on something that happens to be sold by Wal–Mart," which is not enough "to support an inference that Wal–Mart caused the spill." *Id.*

The Seventh Circuit reached the same conclusion in *Piotrowski v. Menard, Inc.*, where the plaintiff slipped on two rocks in a Menard's parking lot. 842 F.3d 1035, 1037 (7th Cir. 2016). The plaintiff contended that Menard caused the dangerous condition because the store sold bags of the same kind of rocks and also used the same kind of rocks in a planter it maintained outside the store. *Id.* at 1037, 1038. The Seventh Circuit rejected her contention, saying the fact "Menard sold river rocks and used river rocks to fill a planter" was "not enough" to raise a reliable inference that it was more likely a Menard's employee, rather than a third party, that caused the rocks to end up in the parking lot. *Id.* at 1039. The plaintiff needed something "further . . . however slight" to support the necessary inference a Menard employee more likely caused the dangerous condition, but she failed to present such evidence. *Id.* at 1038, 1039. The plaintiff did not see the rocks fall, neither she nor anyone else knew how the rocks at issue ended up in the parking lot, and there were "many" possible explanations, including that a patron or child carried them away from the planter, a customer inadvertently knocked them out of the planter, or they fell from the tires of a vehicle driving through the lot. *Id*. at 1039. The Seventh

Circuit explained that while the plaintiff was "correct that a Menard employee's actions *could* have caused the rocks to spill, that this *was* the cause is only speculation, and speculation is not sufficient to survive summary judgment." *Id.* (emphasis added).

The Court of Appeals reached a different result in *Lane v. Hardee's Food Systems*, where the plaintiff slipped in water on the restroom floor of a Hardee's restaurant. 184 F.3d 705, 706 (7th Cir. 1999). The Seventh Circuit held that the district court erred in issuing a directed verdict against the plaintiff because he had "presented the minimum evidence necessary to support a verdict" in his favor, though barely. *Id.* at 708. Specifically, the plaintiff presented evidence that the restaurant had a policy of cleaning the restroom every day after breakfast ended at 10:30 a.m., and a jury could thus reasonably infer that the floor was indeed mopped around that time on the day of the accident. *Id.* at 706, 708. Also, "the most favorable" view of the plaintiff's timeline would put him "in the restroom soon after the inferred mopping." *Id.* at 706, 708. And, finally, "spilled water or residual dampness is not an unusual by-product of mopping." *Id.* at 708. The Seventh Circuit held that, based on these facts and the inferences that could rightfully be drawn from them, a jury could reasonably conclude that Hardees, rather than another customer, was responsible for the dangerous condition. *Id.*

Here, Plaintiff contended that Vestis caused the dangerous condition by replacing the dry mat in his office with a wet one shortly before he fell (Doc. 58, pp. 2, 3). As with all of the cases outlined above, there was no direct evidence of Vestis's alleged negligence (Doc. 56, p. 9). There was only circumstantial evidence. Specifically, Plaintiff offered his own testimony that Vestis was still changing out the mats at the dealership every week

(Doc. 58, p. 4). He also offered his own testimony that on the morning of the accident, he traversed the mat in his office on several occasions without falling (*Id.*). Shortly after the Vestis employees arrived at the dealership, he slipped on the mat in his office (*Id.*). Photographs taken after he fell show that the mat in his office was "heavily saturated" (*Id.*).[1] And the Vestis employees did not protest when they were accused of placing the wet mat and one of them replaced it with a dry mat (Doc. 58, p. 4). Plaintiff believes a jury could infer from these facts that the Vestis employees *must* have put down a wet mat because the mat was dry during the first hour he was at work, it only became a hazard once the Vestis employees arrived, and there was no other possible source for the water under the mat (Doc. 52, pp. 3–4; Doc. 51, para. 10, 18).

But like in *Zuppardi* and *Piotrowski*, Plaintiff's evidence invites inferences that veer too far into speculation to survive summary judgment. First and foremost, Plaintiff's inferences are missing a critical link—he has not provided any evidence whatsoever that the Vestis employees were handling wet mats anywhere at the dealership, or that they were even in Plaintiff's office, on the day of the incident and prior to Plaintiff's fall. It is undisputed that the Vestis employees were at the dealership only a short time (10 minutes or less) before Plaintiff fell (Doc. 56, p. 4). There is no testimony that, in that brief time, anyone saw the Vestis employees doing anything that suggested they were in the process

---

[1] As the Court explained in the summary judgment order, pictures of the mat at issue show that the top of the mat was visibly wet and there was a "considerable, almost shocking" amount of water under the mat (*see* Doc. 56, p. 13 (citing Doc. 51-1, pp. 141, 142)). "It is no stretch to say that, if Vestis employees had laid down the mat just minutes prior to Plaintiff's fall, it would have literally been dripping water as they handled it." (Doc. 56, p. 13).

of changing out mats at the dealership, such as rolling up mats, carrying mats, or placing mats down anywhere inside the dealership (Doc. 56, p. 11). Similarly, Plaintiff did not offer any evidence that suggested the Vestis employees had been handling a "heavily saturated" mat, such as wet spots on their clothes, trails or tracks of water leading to or from the mat, or evidence that they had wiped up water near the mat. Plaintiff also did not offer any evidence as to the Vestis employees' usual practice at the dealership, such as how long they were typically there, the order in which they typically completed their tasks, or more directly, that they typically had the floor mats changed out within the first 10 minutes of their arrival at the dealership. And there was no evidence whatsoever tending to suggest the Vestis employees ever set foot in Plaintiff's office in the brief time they were at the dealership prior to Plaintiff's fall (Doc. 56, p. 12). *But see Varner*, 40 F. App'x at 1002 (explaining evidence is sufficient to infer defendant is responsible for creating dangerous condition where "the plaintiffs . . . presented evidence that the defendant (or an agent) had used or came in contact with foreign material in the location of the accident."); *Lane*, 184 F.3d at 708 (finding jury had enough to reasonably conclude that defendant caused dangerous condition based on evidence that defendant usually mopped restroom at certain time every day).

Furthermore, as explained in the summary judgment order, common sense and ordinary experience suggest there *are* other possible sources for the water under the mat aside from the Vestis employees, contrary to Plaintiff's contention otherwise (*see* Doc. 56, pp. 14–15; *see also id.* at pp. 7, 11). Additionally, the fact that Plaintiff had no issues with the mat during the first hour he was at work does not lead to a more probable conclusion

that the mat was dry prior to the Vestis employees' arrival at the dealership (Doc. 56, pp. 12–13); it is equally likely that the mat was wet and, each of the previous times that Plaintiff crossed it, he simply stepped in a different spot on the mat or just got lucky (*Id.* at p. 13).

Simply put, Plaintiff did not offer sufficient evidence from which a reasonably jury could conclude, without speculating or drawing inference upon inference, that the Vestis employees were more likely responsible for the dangerous condition. For these reasons, Plaintiff has failed to convince the Court that it should reverse course, and the Court remains convinced that granting summary judgment to Defendant was proper. Plaintiff's Motion to Vacate, Modify, or Set Aside Summary Judgment (Doc. 58) is accordingly **DENIED.** Defendant's cursory request to be awarded its attorney fees and costs incurred in responding to Plaintiff's motion is likewise denied. Defendant did not support their request with any argument or legal authority and, in the Court's opinion, Plaintiff's motion was not frivolous or so patently meritless that it warrants awarding Defendant fees and costs.

**IT IS SO ORDERED.**

**DATED: October 16, 2026**

**MARK A. BEATTY**
**United States Magistrate Judge**